IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Sandchase Cody, | ) | Case No. 9:23-cv-01516-JDA |
| Petitioner, | ) | |
| v. | ) | **OPINION AND ORDER** |
| S. Janson, | ) | |
| Respondent. | ) | |

Petitioner, a federal prisoner, seeks habeas corpus relief pursuant to 28 U.S.C. § 2241. This matter is before the Court on Respondent's motion to dismiss or, in the alternative, for summary judgment. [Doc. 12.] In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2), D.S.C., this matter was referred to United States Magistrate Judge Molly H. Cherry for pre-trial proceedings.

On November 21, 2023, the Magistrate Judge issued a Report and Recommendation ("Report") recommending that Respondent's motion be granted in part and denied in part.[1] [Doc. 16.] The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. Respondent filed objections to the Report on December 5, 2023 [Doc. 18], and Petitioner did not file a reply or his own objections to the Report. The time for objections has now lapsed, and this matter is ripe for review.

---

[1] Because both parties have introduced evidence outside of the pleadings for the Court's consideration of this matter, the Magistrate Judge treated Respondent's motion as a motion for summary judgment, and this Court will do the same.

**STANDARD OF REVIEW**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a de novo determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). The Court will review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" (internal quotation marks omitted)).

**BACKGROUND**

Petitioner is an inmate at Federal Correctional Institution ("FCI") Edgefield who filed this action asserting that his due process rights were violated when he went through the Bureau of Prisons ("BOP") disciplinary process. [Doc. 1 at 1.] The Magistrate Judge provided an accurate and thorough recitation of the facts and, therefore, the Court includes only the factual information necessary to address Respondent's objections.

On May 30, 2022, an FCI Edgefield staff member wrote an incident report asserting that Petitioner violated the Prohibited Act Code 205, Engaging in Sexual Acts. [Doc. 12-1 at 4.] After a Unit Disciplinary Committee ("UDC") hearing on June 3, 2022, the charge was referred to the Discipline Hearing Officer ("DHO") for further processing. [*Id*. at 5.]

That same day, Petitioner was provided a Notice of Discipline Hearing Before the DHO form in which he requested to have Recreation Supervisor Ellison ("Mr. Ellison") as a staff representative. [*Id*. at 8.] Petitioner also indicated on the form that he wanted to have witnesses but did not list any witness names, and instead put a question mark on the line where the witness name would be listed. [*Id*.] Petitioner avers[2] that he knew the eyewitness inmate by the initials "C.K." and "passed this information verbally to Counselor Tolbert, Recreation Supervisor Ellison, and DHO Nevils, but was ignored. Nobody expended the minimal effort necessary to find and interview that witness."[3] [Doc. 15 at 2, 4–5.]

On June 28, 2022, a DHO hearing was held, and Mr. Ellison served as Petitioner's staff representative. [Doc. 12-1 at 14.] In an affidavit filed with Respondent's motion, Mr. Ellison stated that he met with Petitioner before the hearing and discussed the incident, that he reviewed the video camera footage, and that the angle of the footage "was not optimal," but he could "see Petitioner moving in a way that supported the Incident Report." [Doc. 12-2 ¶¶ 5–6.] Mr. Ellison further stated that Petitioner did not ask him to investigate

---

[2] Petitioner's primary arguments are contained in his verified Petition and verified response to Respondent's motion, which must be considered as affidavits for summary judgment purposes. *See Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021) ("[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." (emphasis omitted)).

[3] Inmate C.K. has since been identified as Cheston Philpot, who submitted an affidavit in support of Petitioner's Petition. [Doc. 1-6.] In his affidavit, Mr. Philpot stated that on the day of the incident, he provided another inmate with his name and register number and volunteered to be a witness for Petitioner, and that approximately one week later, the other inmate advised that he had hand-delivered Mr. Philpot's name and register number to a counselor at the prison. [*Id*. at 1–2.] Mr. Philpot stated that he was never interviewed by any staff member relating to this issue. [*Id.* at 2.] He further stated that he disagreed with the accusations in the incident report. [*Id.*]

3

the identity of any inmates who may have witnessed the incident. [*Id*. ¶ 5.] Petitioner, on the other hand, claims that Mr. Ellison failed to meet with him before the DHO hearing, failed to collect witness statements, and "stood mute" at the hearing. [Doc. 1 at 13.]

The DHO found Petitioner committed the prohibited act as charged and sanctioned him to disallowance of 27 days of good conduct time ("GCT"), 30 days of disciplinary segregation, and 100 days loss of commissary privileges. [Doc. 12-1 at 15–16.] In his Petition, Petitioner argues that his due process rights were violated and requests that the Court expunge the incident report from his record, restore his GCT credits, and award him costs and fees. [Doc. 1 at 6–7.]

## **DISCUSSION**

The Magistrate Judge recommends that Respondent's motion for summary judgment be granted in part and denied in part. [Doc. 16.] Under *Wolff v. McDonnell*, 418 U.S. 539 (1974), prisoners are entitled to "those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the . . . right is not arbitrarily abrogated." *Id*. at 557. Specifically, due process requires that a prisoner subject to a loss of GCT through disciplinary sanctions be afforded: (1) written notice of the disciplinary charges at least 24 hours in advance of the disciplinary hearing; (2) a neutral and detached hearing body; (3) the opportunity to call witnesses and present documentary evidence; (4) an opportunity for non-attorney representation if the inmate is illiterate or the disciplinary hearing is complex; and (5) a written statement provided by the fact finder(s) outlining the evidence relied upon and the reasons for the chosen course of disciplinary action. *Id*. at 563–72. The Magistrate Judge concluded that Petitioner has not shown that his due process rights were violated with respect to access to documentary

evidence in the form of video evidence, staff representation at the hearing, or the DHO's impartiality, but that there is a genuine dispute of material fact as to whether Petitioner was afforded his due process right to present documentary evidence in the form of witness testimony. [Doc. 16 at 9–23.] The Magistrate Judge therefore recommends granting Respondent's motion with respect to the issues of Petitioner's access to video evidence, staff representation, and the DHO's impartiality, and denying Respondent's motion and setting an evidentiary hearing on the issue of whether Petitioner was afforded his due process right to present documentary evidence in the form of witness testimony. [*Id*. at 23.]

Respondent objects to the Magistrate Judge's recommendation that his motion be partially denied, arguing that Petitioner was afforded all his due process rights and there is no genuine dispute of material fact as to whether Petitioner was afforded his due process right to present documentary evidence in the form of witness testimony.[4] [Doc. 18.] Specifically, Respondent argues that "due process does not necessitate institution staff to investigate and discover the identity of unknown and unnamed witnesses for inmate disciplinary hearings" and that Petitioner has conceded that he did not know the identity of his potential witness at the time of the disciplinary hearing. [*Id*. at 1–2.] Respondent therefore argues that any dispute of fact regarding "whether Petitioner made a mention of/request for a witness before and during his DHO proceedings" is immaterial

---

[4] Because Petitioner did not file objections to the Report, this Court will focus its analysis on Respondent's objection to the Report's partial denial of his motion for summary judgment on the issue of whether Petitioner was afforded his due process right to present documentary evidence in the form of witness testimony. *See Diamond*, 416 F.3d at 315 (stating that "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." (internal quotation marks omitted)).

because even if Petitioner had made the request, denying the request would have been proper because Petitioner did not know the identity of his witness.  [*Id*.]  Respondent also contends that because prison staff were under no obligation to investigate the identity of the witness Petitioner wanted to call, any error in not allowing him to present witness testimony would be harmless.  [*Id*. at 2.]

In considering Respondent's objections, the primary issue before the Court is whether due process requires institution staff to perform any type of investigation to identify and locate an inmate's desired witnesses prior to a disciplinary hearing.  If, as Respondent argues, institution staff have no duty to perform any investigation to identify and locate an inmate's desired witnesses, then he is correct that Petitioner's right to present witnesses was not violated.  If, however, due process requires institution staff to make some effort to identify and locate an inmate's witnesses prior to a disciplinary hearing, then the Magistrate Judge correctly concluded that summary judgment is not appropriate on this issue because there is a genuine dispute of material fact as to whether Petitioner made requests for witnesses before and/or during the hearing.  [Doc. 16 at 14.]

Respondent cites multiple cases outside the Fourth Circuit to support his contention that due process does not require institution staff to investigate and identify unknown witnesses for inmate disciplinary hearings.  [Doc. 18 at 2 (citing *Crosby v. Warden Lewisburg USP*, 788 F. App'x 816, 818 (3d Cir. 2019); *Drabovskiy v. Allenwood*, 597 F. App'x 47, 49 (3d Cir. 2015); *Soto v. Runnels*, No. C 02-0109 MMC (PR), 2002 WL 31236204, at *2 (N.D. Cal. Oct. 2, 2002)).]  This Court agrees that due process does not require prison officials to scrupulously investigate the identities of unknown witnesses prior to a disciplinary hearing.  *See Leist v. Carter*, No. BAH-23-479, 2024 WL 69583, at

6

*4 (D. Md. Jan. 5, 2024) ("Due process does not guarantee a prisoner the right to have prison officials comb the institution for unidentified witnesses."); *Shuck v. Bledsoe,* No. 7:05-CV-00167, 2005 WL 1862666, at *3 (W.D. Va. Aug. 3, 2005) ("Prison officials are not required to exhaust all possible avenues of locating the witness suggested by [an] inmate."), *Report and Recommendation adopted by* 2005 WL 2675090 (W.D. Va. Oct. 20, 2005).

However, the Court notes that several cases, including cases within the Fourth Circuit, have held that "[w]ith respect to an inmate's right to call witnesses for disciplinary proceedings, prison authorities should make reasonable efforts to identify [the] petitioner's witnesses."  *Clark v. Hooks*, No. 1:16cv672, 2017 WL 3822898 (M.D.N.C. Aug. 8, 2017) (internal quotation marks omitted) (denying respondent's motion for summary judgment and finding that prison authorities should make reasonable efforts to identify an inmate's witnesses), *Report and Recommendation adopted in relevant part by* 2017 WL 3724233 (M.D.N.C. Aug. 28, 2017); *see Wilson v. Davis*, 102 F. App'x 37, 39 (7th Cir. 2004) (remanding to the district court to determine whether it was possible for prison authorities to identify the individuals a prisoner wished to call as witnesses in his disciplinary proceeding and holding that it would violate the prisoner's due process rights if the prison knew "or readily could learn their identities and [was] playing games in an effort to avoid their testimony"); *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 31 (2d Cir. 1991) (holding that a disciplinary hearing officer's determination that an inmate had waived a request for witnesses due to the inmate's inability to identify other prisoners by name was "arbitrary," especially because the identities of those witnesses were easily

7

ascertainable by prison authorities); *Shuck,* 2005 WL 1862666at *3 (suggesting that prison officials must make "reasonably practical" efforts to identify prospective witnesses).

For example, in *Clark*, the petitioner was found guilty of committing B06, Sexual Act by a Prisoner at a prison disciplinary hearing and brought a petition for habeas relief claiming violation of his due process rights. *See* 2017 WL 3822898, at *1. Specifically, the petitioner claimed that his due process right to call witnesses at the hearing was violated because the investigating officer attempted to obtain a witness statement from the wrong inmate when the petitioner merely identified his witness as "Inmate Thomas" and listed Thomas's bunk information on his disciplinary hearing form. *Id*. at *5–6. Citing a series of cases supporting the proposition that prison authorities must make reasonable efforts to identify the petitioner's witnesses, the court found that there were genuine disputes of material fact with respect to whether the petitioner's due process right to call witnesses at the hearing was violated. *Id*. at *5–7. The court further noted that it lacked sufficient evidence to determine whether the alleged due process errors were harmless because Thomas's sworn statement contradicted the account of the accusing prison guard that formed the basis of Petitioner's disciplinary conviction.[5] *Id*. at *7.

Taking all this into consideration, the Court concludes that due process required prison authorities to make reasonable efforts to identify Petitioner's witness prior to his DHO hearing. There is contradicting testimony—and therefore a genuine dispute of material fact—as to whether Petitioner informed his staff representative and/or the DHO that he wished to call an inmate named C.K. as a witness at his hearing and whether any

---

[5] As in this case, the petitioner in *Clark* later identified the witness he desired for his disciplinary hearing and that witness provided a sworn statement that was attached to the habeas petition. *Clark*, 2017 WL 3822898, at *7.

prison authorities made a reasonable effort to identify that witness. The DHO testified in his affidavit that if Petitioner had told him "before the hearing that an unknown inmate had witnessed the event and that [Petitioner] wanted that inmate to serve as a witness, and if [the DHO] knew the identity of that inmate, [the DHO] would have sought a statement from that inmate and notated it in [his] DHO Report." [Doc. 12-3 ¶ 8.] The DHO further attested that if Petitioner had insisted there was an unknown witness during the hearing, he would not have indicated that Petitioner waived his right to call witnesses. [*Id*. ¶ 9.] Petitioner disputes this position, stating in his verified response in opposition to Respondent's motion that he informed the DHO and Mr. Ellison both before and during the hearing that he wanted to call an unknown witness. [Doc. 15 at 4.] He argues that he knew the eyewitness inmate as C.K. and gave this information to the DHO and Mr. Ellison prior to the hearing. [*Id*.] He also argues that before the hearing, he told Mr. Ellison about the eyewitness and asked him to view the video camera footage. [*Id*. at 2; *see* Doc. 1 at 12–13.]

The Court finds that this evidence is sufficient to create a genuine dispute of material fact as to whether Petitioner was afforded his due process right to present documentary evidence in the form of witness testimony. Though he did not know the specific name of the inmate eyewitness prior to the hearing, Petitioner has forecasted evidence that he sought out the identity of the inmate in multiple instances and was denied minimal assistance that would have been needed to identify the potential witness, thereby implicating his due process right. *See Wolff*, 418 U.S. at 557; *see also Clark*, 2017 WL 3822898, at *5–7. Because "the DHO gave greater weight to the staff member[']s account of the incident" based on Petitioner's failure "to provide any evidence to prove [his]

9

innocence" [Doc. 12-1 at 16], it rejects Respondent's argument that any error in not allowing Plaintiff to present witness testimony was harmless. As the Magistrate Judge noted, "Mr. Philpot's eyewitness testimony directly contradicts [the incident report] such that it could have aided Petitioner's defense." [Doc. 16 at 16.] The Court therefore overrules Respondent's objections.

## **CONCLUSION**

The Court has conducted a de novo review of the Report, the record, and the applicable law. Upon such review, the Court accepts the Report and Recommendation of the Magistrate Judge as modified and incorporates it by reference to the extent it is not inconsistent with this Order. Accordingly, Respondent's motion for summary judgment is GRANTED IN PART and DENIED IN PART. Specifically, Respondent's motion is granted with respect to the issues of Petitioner's access to video evidence, staff representation, and the DHO's impartiality. As to whether Petitioner was afforded his due process right to present evidence in the form of witness testimony, the Court denies Respondent's motion for summary judgment and directs that Respondent shall either expunge the incident report or provide Petitioner with an administrative rehearing and restore Petitioner's good time credits pending the rehearing.[6]

IT IS SO ORDERED.

---

[6] The Magistrate Judge recommends that the Court set an evidentiary hearing to resolve the factual dispute on the issue of whether Petitioner was afforded his due process right to present documentary evidence in the form of witness testimony. [Doc. 16 at 23.] In his objections, Respondent provided that "[i]n the event the Court overrules Respondent's objections to the [Report], Respondent is amenable to preserving judicial resources through administratively rehearing or expunging the incident report, which obviates the need for an evidentiary hearing." [Doc. 18 at 4 n. 1.] The Court agrees with Respondent's suggestion which moots the Magistrate Judge's recommendation that an evidentiary hearing be set.

s/ Jacquelyn D. Austin
United States District Judge

April 19, 2024 Beaufort,
South Carolina

## **CERTIFICATE OF APPEALABILITY**

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a) of the Rules Governing Section 2254 Cases; see Rule 1(b) of the Rules Governing Section 2254 Cases (stating that a district court may apply these rules to a habeas petition not filed pursuant to § 2254). A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court denies relief on the merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find that the court's assessment of the constitutional claims is debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003). When the district court denies relief on procedural grounds, the prisoner must demonstrate *both* that the dispositive procedural ruling is debatable, and that the petition states a debatable claim of the denial of a constitutional right. *Slack*, 529 U.S. at 484–85. In this case, the Court concludes that Petitioner has failed to make the requisite showing of "the denial of a constitutional right" with respect to the issues of Petitioner's access to video evidence, staff representation at the hearing, and the DHO impartiality.